**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4193**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

ANDRE LAMONTE BALDWIN,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (7:11-cr-00065-F-1)

Submitted:  September 21, 2012        Decided:  October 3, 2012

Before WILKINSON, KEENAN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.    Thomas  G.  Walker,  United  States  Attorney, Jennifer P. May-Parker, Kristine L. Fritz, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Andre Lamonte Baldwin pled guilty to unlawful possession of firearms and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1) (2006), and was sentenced to a term of eighty-seven months' imprisonment. Baldwin appeals his sentence, asserting that the district court clearly erred in applying the cross reference in U.S. Sentencing Guidelines Manual § 2K2.1(c)(1) (2011) to USSG § 2D1.1 on the ground that Baldwin possessed the firearms in connection with drug trafficking. We affirm.

North Carolina law enforcement officers investigating suspected drug sales at Baldwin's residence went to his mobile home in August 2010. When they arrived, Baldwin and three other men emerged from an outbuilding ten to fifteen yards behind his home. Baldwin consented to a search of his home, where the investigators found a loaded 12 gauge shotgun and a loaded, stolen handgun. In the outbuilding, they found a small bag of marijuana and a box of 20 gauge shotgun shells. The men with Baldwin were interviewed and patted down. Benny Locklear, Jr., had concealed inside his pants a rubber glove containing 11.7 grams of powder cocaine, 9.1 grams of crack cocaine, and several prescription pills; he also had a set of digital scales in his pocket. Melvin McLauchlin said Baldwin handed the blue glove to Locklear just before Baldwin went outside to meet the

2

investigators. When Locklear was interviewed, he admitted that Baldwin gave him the glove and that he believed that the glove contained drugs.

Baldwin voluntarily told investigators that he had someone else buy the shotgun for him because, with prior felony drug convictions, he could not own firearms. He said could not remember how he obtained the handgun. Baldwin said he needed firearms to protect his family because he had been robbed and shot at his home about five years earlier. Baldwin admitted that he had been selling cocaine during the past six months and had sold crack that morning. He said he bought one ounce of cocaine every two weeks, cooked half of it into crack, and sold both the powder cocaine and crack. He admitted that the drugs found in the blue glove obtained from Locklear belonged to him. Investigators later learned that the shotgun was bought in 2001 and that the handgun had been stolen in July 2005.

After Baldwin's guilty plea to the instant federal felon-in-possession offense, the probation officer recommended a base offense level of 30, which was computed by applying the cross reference from USSG § 2K2.1(c)(1) to USSG § 2D1.1 because Baldwin possessed the firearms in connection with the offense of cocaine distribution. See USSG § 2K2.1 cmt. n.14(B)(ii). Baldwin objected, arguing that the cross reference did not apply because Application Note 14(B)(ii) to § 2K2.1 provides that the

3

cross reference applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Baldwin argued that his firearms were not in "close proximity" to the drugs.

At the sentencing hearing, the government presented evidence about Baldwin's arrest, as well as the investigation of the robbery Baldwin experienced in October 2005. One of the suspects apprehended after the robbery cooperated and informed investigators that the intent of the robbers was to kill Baldwin because he was a rival drug dealer and that they had robbed him of crack, powder cocaine, and cash. Before overruling Baldwin's objection to application of the cross reference, the district court observed that Baldwin admitted that he had been selling drugs for the six months leading up to his arrest. The court noted that, "a drug dealer possesses firearms to protect himself and to protect his drugs and the proceeds of it." The court imposed a sentence at the low end of the Guidelines range.

We review sentences under a deferential abuse of discretion standard, Gall v. United States, 552 U.S. 38, 46 (2007), which first requires review of the sentence for significant procedural error, such as improperly calculating the Guidelines range. Id. at 51. Under USSG § 2K2.1(c)(1)(A), a cross reference to USSG § 2X1.1 and USSG § 2D1.1 is appropriate

4

"[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense," in this case, a drug offense. United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996). Under Application Note 14(B)(ii), when the other offense is "a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . application of subsection[] . . . (c)(1) is warranted because the presence of the firearm has the potential of facilitating another . . . offense." The district court's determination that the firearm had the potential to facilitate the other offense is reviewed for clear error. United States v. Jenkins, 566 F.3d 160, 163 (4th Cir. 2009) (reviewing § 2K2.1(b)(6) enhancement).

Baldwin argues that the guns and the drugs found in his home and the outbuilding were not in "close proximity," and that, therefore, the government failed to establish that he possessed the guns in connection with the drug offense. However, "close proximity" is not defined in the Guidelines or Application Note 14(B)(ii). While it is not clear that the ten to fifteen yards between Baldwin's mobile home and his outbuilding put too great a distance between the guns and drugs for the district court to have concluded that they were in close proximity, the court did not make a distinct finding on this question.

5

The court did find, though, that Baldwin admitted that he was selling drugs when he was arrested and that "a drug dealer possesses firearm to protect himself and to protect his drugs and the proceeds of it." Application Note 14(A) to § 2K2.1 provides that, in general, "subsection (c)(1) [applies] if the firearm or ammunition facilitated, or had the potential of facilitating . . . another offense." When he was arrested, Baldwin said he needed the firearms for protection because he had been robbed and shot five years earlier. The government's second witness at sentencing testified that the robbery occurred because of Baldwin's drug activity at the time. Consequently, because Baldwin was still engaged in selling drugs, the district court's conclusion that his firearm facilitated or had the potential to facilitate his drug offense was not clearly erroneous.

We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED